**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

**DINA M. McKENNA,**
        **Plaintiff,**

-vs-                                                    **Case No. 6:06-cv-1923-Orl-31KRS**

**WELLCARE HEALTH PLANS, INC.,**
        **Defendant.**

_____

## ORDER

This matter comes before the Court on Defendant's Motion for Summary Judgment (Doc. 53) and Plaintiff's Response thereto (Doc. 59).

Plaintiff's Amended Complaint (Doc. 10) contains six counts alleging: (1) gender and pregnancy discrimination in violation of Title VII; (2) sex discrimination based on pregnancy in violation of the Florida Civil Rights Act, Fl. Stat. § 760 ("the FCRA"); (3) sexual harassment in violation of Title VII; (4) sexual harassment in violation of the FCRA; (5) retaliation in violation of Title VII and (6) retaliation in violation of the FCRA.[1] In an Order dated May 7, 2007, this Court dismissed Count II of Plaintiff's Amended Complaint with prejudice. (Doc. 22). Defendant now seeks summary judgment on the remaining five counts.

---

[1] In Plaintiff's Response she attempts to allege a claim for wage discrimination under Title VII as well. (*See* Doc. 59 at 17-18). However, it is clear that Plaintiff did not allege such a claim in her Amended Complaint, nor did she allege wage discrimination in her EEOC complaint (Doc. 35-3 at 2). Therefore, this claim has no merit.

**I. Factual Background**

Plaintiff Dina McKenna ("McKenna") was employed by Defendant Wellcare Health Plans, Inc. ("Wellcare") as a Director of Provider Relations and interim Director of Network Development[2] from September 2004 until her termination, on March 7, 2006. Until approximately June of 2005, McKenna was supervised by Vanessa Wood ("Wood"), after that, her direct supervisor was Executive Director Cesar Martinez ("Martinez"). Plaintiff alleges that during her employment with Wellcare she was subjected to discrimination and a hostile work environment, which eventually culminated in her wrongful termination.

*A) Allegations Relating to Sexual Harassment*

In February of 2005, McKenna and a group of her coworkers went out for drinks one evening after a Leadership Summit and Jack Shoemaker ("Shoemaker") (an executive from another office) stroked her hair, moved his hand down her back and grabbed her buttocks. McKenna Depo. I at 179-82.[3] McKenna told Vice President of Hospital Contracting Gus Keriazes ("Keriazes") and Wood about this incident. *Id*. at 182-83. Wood told McKenna that Shoemaker was "harmless" and gets that way when he is drunk. *Id*. at 182. McKenna never saw Shoemaker again. *Id*. at 183.

In February 2005, several colleagues told McKenna that there was a rumor going around the company that she was having an affair with Vice President of Network Relations Kevin

---

[2]Defendant disputes that Plaintiff was "interim Director of Network Development", however, Plaintiff maintains that she was doing both jobs throughout her employment with Wellcare.

[3]McKenna was deposed twice: on December 18, 2007 ("Depo. I") and on February 22, 2008 ("Depo. II").

Enterlein ("Enterlein"). *Id*. at 103-06. McKenna reported this rumor to Wood, who said "it could be worse, it could be someone not so high up in the company" and told McKenna to speak with Enterlein. *Id*. at 106, 108. When McKenna spoke with Enterlein, he just laughed. *Id*. at 106.

At the 2006 Leadership Summit, McKenna told a company executive from the Tampa office named Lou Sessa ("Sessa") that she needed to go express milk during a break because she was breast-feeding, and he responded that she didn't need to do that because he would be her baby and she could feed him. *Id*. at 170-72. McKenna told Keriazes about this incident, and then, at his suggestion, she complained to Martinez, who said "I'm sure he did not mean anything by it." *Id*. at 172-74.

### B) Allegations Relating to Discrimination

When Martinez became McKenna's supervisor, he treated her like an administrative assistant, by assigning her menial tasks that were not her responsibility. *Id* at 210. Furthermore, prior to Martinez becoming her supervisor, McKenna was consistently included in staff meetings and business dinners. However, after June of 2005, McKenna was no longer included in these important business functions. *Id*. at 137. In September 2005, McKenna confronted Martinez and Director of Sales John French ("French"), and asked why she was no longer being included in the meetings.[4] McKenna was told that it was because she was pregnant and could not drink alcohol. *Id*. at 140, 208.

On October 16, 2005, Martinez questioned McKenna regarding the length of her maternity leave, stating that he believed she would be back in three weeks. When McKenna informed him

---

[4] The meetings McKenna was excluded from were directly related to Network Development and Provider Relations, McKenna's areas of responsibility.

-3-

that she was taking the full twelve weeks she was entitled to, he asked "why," and walked away. McKenna began her approved leave under the Family Medical Leave Act ("FMLA") on October 25, 2005 and returned to work 12 weeks later.

In January 2006, it was brought to McKenna's attention that, during her leave, Martinez was believed to be "grooming" French for the position of Executive Director. Thus, McKenna spoke with Martinez about her interest in becoming an Executive Director. At this time, McKenna also indicated to Martinez that she and her husband wanted to have another baby and Martinez replied "Geez, how many more kids are you going to have?" He also asked her when she planned on having another baby and asked her "isn't four kids enough?"

On March 4, 2006, McKenna sent an email to Martinez indicating that she needed a day off to have some medical tests run, but she received no response. On March 7, 2006, McKenna was summoned by Martinez to a conference room and was terminated. Martinez told McKenna that she "did not fit the culture that [he] wanted in the office." *Id*. at 192.

**II. Standard of Review**

A party is entitled to summary judgment when the party can show that there is no genuine issue as to any material fact. FED. R. CIV. P. 56(c); *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458 (11th Cir. 1994). Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Watson v. Adecco Employment Svc., Inc.*, 252 F. Supp. 2d 1347, 1352 (M.D. Fla. 2003).

When a party moving for summary judgment points out an absence of evidence on a

dispositive issue for which the non-moving party bears the burden of proof at trial, the non-moving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986) (internal quotations and citation omitted). Thereafter, summary judgment is mandated against the non-moving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id.* at 322, 324-25; *Watson*, 252 F. Supp. 2d at 1352. The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value"); *Broadway v. City of Montgomery, Ala.*, 530 F.2d 657, 660 (5th Cir. 1976).

**III. Legal Analysis**

*A) Count I: Discrimination*

To establish a *prima facie* case of employment discrimination under Title VII, absent direct evidence of discriminatory intent, the plaintiff must meet the *McDonnell Douglas* test[5] by showing: "(1) that she is a member of a protected class, (2) that she is entitled to or qualified for the position, (3) that she suffered an adverse employment action, and (4) that she was treated less favorably than similarly situated employees who are not members of her protected class." *Hanley v. Sports Authority,* 143 F.Supp.2d 1351, 1355-6 (S.D. Fla. 2000) (citing *Holifield v. Reno,* 115 F.3d 1555 (11th Cir. 1997)).

---

[5]*See McDonnell Douglas Corp v. Green,* 411 U.S. 792 (1973).

Establishment of a *prima facie* case of discrimination creates a rebuttable presumption of discrimination in favor of the plaintiff. The burden of production then shifts to the defendant "to articulate some legitimate nondiscriminatory reason" for the employer's actions. *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308 (1996). Once the defendant has offered a legitimate nondiscriminatory explanation for its decision, the presumption of illegal discrimination is destroyed. The burden then falls on the plaintiff to show that the employer's explanations are merely pre-textual. *See McDonnell,* 411 U.S. at 804.

It appears that Defendant concedes, at least for purposes of summary judgment, that Plaintiff has established a *prima facie* case of discrimination.[6] However, Defendant has proffered legitimate reasons for terminating McKenna and the question becomes whether such reasons are pre-textual.

Specifically, Defendant argues that Plaintiff was terminated because she alienated her supervisors and exhibited "divisive and disruptive behavior." (Doc. 53 at 16). However, Plaintiff contends that she was never counseled regarding these issues prior to her termination. McKenna Depo I at 133-35. Furthermore, Plaintiff's testimony regarding her relationships with her coworkers and supervisors is vastly different than the testimony of other witnesses such as Wood and Martinez. Therefore, there are disputed issues of material fact regarding pretext and summary judgment is not appropriate with regard to Count 1.

---

[6]Defendant does attempt to argue that Plaintiff has not suffered any "tangible economic effect" as a result of the alleged adverse employment actions. (Doc. 53 at 21). This argument is without merit, because even if some of the employment actions Plaintiff complains of fail to qualify as "adverse employment actions" under Title VII, it is undisputed that Plaintiff was terminated and termination certainly does qualify.

*B) Counts 3 and 4: Sexual Harassment*[7]

To establish a hostile-environment sexual-harassment claim under Title VII, Plaintiff must show:

> (1) that he or she belongs to a protected group; (2) that the employee has been subject to unwelcome sexual harassment, such as sexual advances, requests for sexual favors, and other conduct of a sexual nature; (3) that the harassment must have been based on the sex of the employee; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) a basis for holding the employer liable.

*Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 999)

Plaintiff alleges three specific instances of unwelcome sexual harassment.[8] Defendant argues, however, that these instances were not frequent or severe enough to create a hostile work environment.

> Establishing that harassing conduct was sufficiently severe or pervasive to alter an employee's terms or conditions of employment includes a subjective and an objective component. The employee must "subjectively perceive" the harassment as sufficiently severe and pervasive to alter the terms or conditions of employment, and this subjective perception must be objectively reasonable. The environment must be one that "a reasonable person would find hostile or abusive" and that "the victim … subjectively perceives … to be abusive." Furthermore, "the objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.'"
>
> The objective component of this analysis is somewhat fact intensive. Nevertheless, the Supreme Court and this Court have identified the following four factors that should be considered in determining whether harassment objectively altered an employee's terms or

---

[7] "The Florida courts have held that decisions construing Title VII are applicable when considering claims under the Florida Civil Rights Act, because the Florida act was patterned after Title VII." *Harper v. Blockbuster Entertainment Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998). Therefore Counts 3 and 4 will be analyzed together, as will Counts 5 and 6.

[8] With regard to the rumors about the affair, this rumor affected both McKenna and Enterlein and appear to be gender neutral.

> conditions of employment: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance. The courts should examine the conduct in context, not as isolated acts, and determine under the totality of the circumstances whether the harassing conduct is sufficiently severe or pervasive to alter the terms or conditions of the plaintiff's employment and create a hostile or abusive working environment.

*Id.* at 1246 (internal citations omitted).

Plaintiff has presented sufficient evidence to meet the subjective prong of this test. However, Plaintiff has not presented evidence that the harassment was severe or pervasive enough to alter the terms or conditions of her employment. Certainly, the behavior of Sessa and Shoemaker was inappropriate, however, neither of these men worked in Plaintiff's office (McKenna Depo. I at 173, 181) and there is no evidence that their behavior affected her working environment. Instead, it appears that these were two isolated incidents, involving two different individuals and occurring approximately one year apart. Considering the totality of the circumstances, Plaintiff's allegations are not sufficient to support her claim of a hostile work environment. Therefore, Defendant is entitled to summary judgment on Counts 3 and 4.

*C) Counts 5 and 6: Retaliation*

"Under Title VII, it is an unlawful employment practice for an employer to discriminate against an employee 'because [she] has opposed any practice made an unlawful employment practice by this subchapter, or because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.' 42 U.S.C. § 2000e-3(a)." *Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 959 (11th Cir. 1997). In order to maintain a claim for retaliation under Title VII, a plaintiff must show that "(1) she engaged in statutorily protected activity, (2) an adverse employment action occurred, and (3) the

adverse action was causally related to the plaintiff's protected activities." *Gregory v. Georgia Dep't of Human Resources*, 355 F.3d 1277, 1279 (11th Cir. 2004).

Plaintiff has clearly established sufficient evidence of retaliation to present these counts to a jury. In February 2006 she engaged in protected activity by complaining to Martinez about the sexually harassing comment made by Sessa. Shortly thereafter, Plaintiff was terminated. Defendant argues that Plaintiff has failed to establish a causal connection because three people were involved in the decision to terminate her and she has only shown that one of them, Martinez, had knowledge of her complaint. This argument is without merit.

Defendant goes on to argue that it has proffered legitimate, non-pretextual reasons for terminating Plaintiff. As discussed above, there are several issues of disputed fact regarding Defendant's true reason for terminating Plaintiff and summary judgment is, therefore, not appropriate.

**IV. Conclusion**

Accordingly, it is

**ORDERED** that Defendant's Motion for Summary Judgment (Doc. 53) is **GRANTED** in part and **DENIED** in part. Counts 3 and 4 are hereby **DISMISSED** with prejudice.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on May 27, 2008.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party